Barbara Kocher In this case, we are asking that the District Court decision dismissing the indictment prior to trial be reversed. Domestic violence is different. The Supreme Court has signaled twice now, at least, that the review of Title 18 United 22 G9 falls perhaps outside the more normal standard of statutory interpretation. The first time was in 2009, when it had the occasion to review this Court's decision in United States v. Hayes. In that case, the Fourth Circuit had ruled that the misdemeanor crime of domestic violence needed to contain as an element of the underlying state offense the domestic relation. The Supreme Court, in very similar language to that in Castleman, discussed the significant dirge on society that domestic violence is, noting that at the time that the statute had been enacted, if domestic violence was required as an underlying element of the state offense, the 922 G9 would have been ineffective in almost two-thirds of the states. That is correct, Your Honor. The Supreme Court then, and most recently in bringing to Your Honor's question, decided in Castleman that the force required is simply that as required in common law battery. It does move the Court and the argument to the divisibility of the North Carolina assault on a female. The government believes that the North Carolina assault statute is divisible. This Court found in United States v. Hemingway that the decamps divisibility analysis applies to common law crimes. As a result, the words whether the statute is divisible on its face or not have less meaning, because with it being a common law definition, we have to turn to case law. Even the defendant resorts to case law in order to say what assault on a female is. Now North Carolina law does in fact set out four elements of assault on a female. The first one is assault. The second one is on a female. The third one is by a male. And the fourth is that that male be 18 or over. The defense, though, would have you stop there. The difference in that North Carolina law and in the South Carolina law that the Court was considering Hemingway is that the North Carolina in the elements of assault on a female contains yet another crime. That is to say, assault is not defined. It has sub elements, which the Court recognized as possible in the Hemingway decision. When you turn then to the definition of assault, the North Carolina courts and the pattern jury instructions set out very clearly that there are different forms of assault. The completed battery assault, which requires actual touching. The attempted battery assault, which is the overt act or attempt. And finally, through case law, the show of violence or the threat of such action. The Castleman decision would indicate and consistent with those three prongs of the Castleman was then considering that two of those, the completed battery assault in North Carolina and the attempted battery assault, both have sufficient force or attempt thereof to qualify as a misdemeanor crime of domestic violence. The show of violence or the threat that is established through the North Carolina law is not of sufficient force. It is simply a threat. And, of course, the misdemeanor crime of domestic violence as defined under Title 18 does not include simply the threatened use of force. This court decided in the White case that the Virginia assault and battery on family members was not sufficient at the time because it was overly broad. That the statute and the laws effectuating that statute contained physical force or offensive touching. Of course, following Castleman, that law in Virginia would now be sufficient under either prong of the law. In the Royal case decided by this court, the court found that jury instructions were a valid source for the court to determine what the applicable law is. In the Royal case, the court was considering the Maryland second-degree assault. Mind you, too, in that case, it was consideration of the Armed Career Criminal Act. And I would note, going back for one second, that that is another way that the domestic violence consideration is different. With the Armed Career Criminal Law, or even the 16-point enhancement under the Immigration Act, the sentencing enhancement that comes up, the court would be looking at greatly enhanced punishment as a result of prior criminal behavior. In 18 U.S.C. section 922G9, the misdemeanor crime of domestic violence, while it is true it is a conviction, almost is a predicate condition rather than a conviction. That is to say, that list includes drug abuse, or a mental commitment, or the fact of being an illegal alien. It's a list of folks that it appears Congress deemed would not be good ones to hold a gun. The Supreme Court's two decisions in Hayes and Castleman would give credence to the idea that the entire consideration of domestic violence is separate and different for the criminal violence consideration. It is interesting to note that the parties in Castleman agreed, coming back to your question, sir, that the statute was divisible. The court, however, in its review, it did take that, it seems, and went forward with the parties' agreement. But the three prongs of the Tennessee law at issue was first, the intentional, knowing, or reckless causing of bodily injury. The second prong was the intentional or knowing causing fear of bodily injury or a threat. And the third one was intentional or knowingly causing physical contact. What is interesting to note is that first prong included recklessness as a possibility. Now the law is replete with decisions that reckless behavior is not the use of force. Once the Supreme Court in Castleman, however, decided that the statute was in fact divisible under these three prongs, they found the second one was not applicable because it was a threat, there wasn't a use of force. Then they turned to the Shepard documents and set out clearly that the Shepard documents under which Castleman was convicted laid out that he intentionally and knowingly assaulted the person, the victim, in that case. The Supreme Court in Castleman, did they make a separate holding that the statute was divisible or did they just go on the parties' agreement? They make reference to the fact that the parties did not dispute the divisibility. So I would find it overstating the case if they're to state that there was a finding that it was divisible. They certainly didn't dispute the parties' agreement and went on as if they concluded it was divisible. Again, even considering divisibility, one of those prongs on its own would appear to be too broad. But once they decided the statute was divisible, they opened the door to the use of those Shepard documents. The Maryland second degree assault coming back then to the Armed Career Criminal Act that this court considered in Royal, the statute simply says that the defendant may not commit an assault. This court then looked to the jury instructions for assistance in determining what assault was. In that case, the jury instructions offered in one unit that the defendant had caused offensive conduct or harm to victim. Prior to Castleman, that jury instruction would have been overly broad. Since Castleman, if Royal had been a misdemeanor crime of domestic violence consideration, that jury instruction would fall completely within the misdemeanor crime of domestic violence. In North Carolina, the case law as set forth in the government's brief sets out clearly the different forms of assault, the completed battery, the attempted battery, and then finally the show of violence, the show of violence being a threat either through gesture or look or some other means that causes fear in the victim that causes them to change their course of conduct. The North Carolina pattern jury instructions, while not having the force of law as pattern jury instructions do not, is akin to when the sentencing guidelines, if the judge acted within the sentencing guidelines, it was presumed reasonable. That is generally the way the courts review the pattern jury instructions. The pattern jury instructions for North Carolina are consistent with those North Carolina cases setting out the elements of assault. As laid out in the addendums, page 2 and 5 of the government's opening brief, the trial court considering a case of assault, including assault on a female, can instruct the jury depending on the facts of the case. That is to say, if there is a battery involved, then the court may choose between the two instructions, which define assault, including a battery. If there is no battery, the North Carolina pattern jury instructions then provide two definitions of assault, which the trial court can choose between. In this case, Mr. Vinson committed the classic assault on a female. We turn to the charging document, which under state law can include the magistrate's order, which is part of the record at joint appendix 38. It states therein that the defendant unlawfully and willfully did assault and strike the woman known to be his wife, a female person, by hitting her about her face with his open hand. That's not a charging document. Isn't that just setting forth the probable cause for the arrest? No, sir. Under North Carolina law, the North Carolina general statutes 15A-922, the magistrate's order is in fact a charging document for the misdemeanor. That charging document and the statement of probable cause contained therein sets out the necessary use of force, and literally the use of force, not just reckless conduct. And that force is at least equal to, if not greater necessary, as that to support the common law battery conviction, which he ultimately obtained, which prevents him from possessing a gun, the government's underlying case. If there are no questions by the court. What did he plead guilty to? He pled guilty to assault on a female. And how do we know that? Because there was no objection by the defendant in the court below. But in addition, your honor, there is a certified record of that judgment. The North Carolina court, which heard this, is not a court of record. So there is no formal entry of plea or plea colloquy or even a judgment. It is a computer printout that is certified by the clerk of court. And it sets out there that the charge on which he was arraigned was the misdemeanor assault on a female, that the offense date goes on that he entered a plea of guilty to that, and the conviction offense, again, is restated misdemeanor assault on a female. How do we know what assault he committed, that he agreed that he committed? It just said assault, right? It says assault on a female. That's what he, so what did he do? And we know now that in many ways you can commit assault. Do you agree? Yes, sir. Well, what did he agree that he did? He agreed to the charging document, and that is that he hid his wife. It didn't say that. It said he agreed that he pled guilty to the stated offense. It didn't say that he pled guilty to what was in the charging paper. The government's position would be that any of the assault on a female would qualify as a misdemeanor crime of domestic violence. The only one, or with the one exception of that show of violence, the threat which caused the victim to change their course of conduct. How do you know he didn't plead to that? We know, sir, that it's not that, because that one has to be specifically pled, I'm sorry, specifically charged. North Carolina law in State v. Allen and in State v. Garcia cases specifically require that if that is the assault that is to be charged and tried against the defendant, that it has to be pled that way. And there is no indication on the record that there was any show of violence that caused the victim to change her course of conduct. On a North Carolina law, that cannot, as a matter of law, be a lesser included offense. I know, sir, that North Carolina law, North Carolina courts have dismissed cases based on an insufficient charging document when the government goes to trial, that is, when the state of North Carolina goes to trial and tries to show a show of violence case. And the charging document did not support that. It was a fatal variance from the charging document. We don't know what might happen in terms of pleading guilty to an offense, a lower offense. Because then, of course, you would be conceding to it. You're talking about cases where they objected to it as a variance. They were dismissed. But if you plead to it to a lesser offense, what does North Carolina law say about that? And I have no case, Your Honor, in response to that. The government would take the position that the defendant in this case pled to a crime that required at least that degree of force required to support that common law battery. Well, under North Carolina law, if the defendant is in court, they're having a hearing, and he says, No, I didn't hit my wife. No, I didn't take a swing at her, but I did raise my hand up, which would seem to fall under this third category that you say does not fit under Castleman. Would the North Carolina court have been prohibited in that situation from taking his guilty plea, even though it wasn't pled in the charging document? If I can make one distinction, the answer is I don't know, and I am sorry that that is the answer. But I do want to make clear that I believe that what Your Honor described would be an attempted battery. The element that is in the show of violence assault that is not in the other two is that that show of violence or menace caused the victim to change their course of conduct. So the cases in which show of violence was found to be the assaulted conduct include cases where a male stared at a passing teenage female, for instance, made her nervous so that she went up a dark set of steps into someone else's home because she was afraid there was no contact. It technically was not a raised fist. There was not a show of force per se, but it was a show of menace that the victim perceived placed her in the apprehension of immediate bodily injury such that the victim changed their conduct. And I would in that light, Your Honor, again, say without any evidence in the charging documents, in the pleading documents that the the only crime. That we have reference to is a completed battery assault. There is certainly no indication in any Shepard document in this case that instead, what happened was something less than a battery and that caused the victim to change her course of conduct. All right. Thank you. Let's hear from Mr. Waters. Good morning and may it please the court. My name is Robert Waters. I represent the appellee in this matter, Rodney Marshall Vinson. We argue that the district court below on motion to dismiss correctly concluded that North Carolina assault on a female does not qualify as a misdemeanor crime of domestic violence under 922 G9. We argue that categorically, under the categorical approach, North Carolina assault on a female doesn't qualify because it doesn't require the use or attempted use of physical force or the threatened use of a deadly weapon. The district court below concluded that the government had conceded this point on motion to dismiss. And I don't believe that's changed on appeal. So unless there are any questions about the categorical approach, I'll turn to the modified category. Mr. Vinson argues that the modified categorical approach has no part to play in this case because statute in question is not divisible. Prior to the Supreme Court's decision in Decamp, the modified categorical approach where courts could look to documents outside the statutory language itself was applied in more or less an ad hoc sort of pragmatic fashion whenever consultation of outside documents would be helpful to the reviewing court. Exactly that line of practice is what the Supreme Court specifically forbade in Decamp. The modified categorical approach is not a general purpose tool to be used whenever it's useful. It's limited to a very narrow range of cases where the statute is divisible and then only for the limited purpose of determining which of the multiple offenses created by the divisible underlying statute form the actual basis of conviction. The Decamp court was very clear about that. It's only to be used in limited range of cases for a limited purpose. The Decamp court only looked to the statutory language under the category as an initial matter to determine if the statute was divisible. It specifically reserved the question of does the reviewing court also look at judicial interpretations of the elements? Well, looking strictly at the statutory language of North Carolina assault as a female, it has but four elements. Assault on a female by a male of 18 years of age or more. It's not divisible. It contains no elements in the language itself that are stated in the alternative or indicate that any of the elements separate and create multiple offenses. The statutory language itself appears to indicate that North Carolina assault on a female is an indivisible statute and therefore the modified categorical approach cannot be applied. How do you respond to your learned counsel's argument which seems to be that when you charge a common law crime, it comes automatically that you look to all the various ways on a common law that one singular crime charge can occur. That makes it divisible. How do you respond to that? I would disagree with learned counsel's argument that that automatically makes it divisible. I believe under this court's ruling in Hemingway, if it's a state common law statute, you can then and must then look at, the federal court must look at and is bound by the state supreme court's definition of what the elements of the offense are. However, that does not avail the government because under the North Carolina state supreme court's definition of the elements of assault on a female matches what's in the statutory language. There are again only four elements. Assault on a female by a male more than 18 years of age. The state court's definition of the elements do not automatically render the offense divisible. The state court must then, if the state court definition of the elements were to say a person who commits assault or battery or threatens the use of a deadly weapon, he then commits assault on a female. That would render it possibly divisible. But that's not the case here. The state court's definition of the assault on a female offense match those of the statutory language and they are not stated in the alternative. There's no indication that the state court's definition of the elements of assault on a female creates separate offenses with separate elements that then require the use of external documents to determine which offense was actually charged. So your bottom line position is that even though the assault is a common law crime, that it's not permissible under DeCamp to look past the statute that incorporates the common law crime to see what the means of proof for that underlying common law crime are to determine if they're divisible elements? Not quite, your honor. DeCamp, as I said, specifically reserved the issue of does the court look to state judicial interpretations in cases of common law? Is it your position that Hemingway did not open the door to look at the construction of a common law crime then? No, your honor. I think Hemingway did open the door to look at state judicial interpretations. What I'm saying here is that in this case, the North Carolina State Supreme Court's interpretation of the North Carolina assault on a female statute defined the elements in a non-divisible way as only assault on a female by a male 18 years or older. It doesn't break it. The state court judicial interpretation could have been rendered in a way such as to make North Carolina assault on a female divisible on review by a federal court, but that's not what was done. The state Supreme Court's interpretation of the elements are themselves indicating of a non-divisible statute. Prior to the statute, was there a North Carolina common law offense of assault on a female as opposed to assault? I don't believe so, your honor. I believe the specific offense of assault on a female is a statutory construction. This seems to me y'all are talking about two different things, two different sections. You're saying we need to focus on 1433C2, and as I understand the state's argument is that you should focus on whether or not 1433 itself is divisible. And you're saying, if I'm understanding you correctly, that 1433C2 has to be divisible. Am I understanding your argument correctly? That is my argument, yes, that 1433C2 is the one that defines assault upon a female. Do you agree that 1433 itself sets out separate offenses? I think 1433 sets out separate contexts. It says that any person who commits an assault or battery or a fray is guilty of assault on a female if he also, and then we have the elements of assault. Well, A refers to simple assaults or assault and battery or a fray, C refers to assault and battery and a fray with specific, in specific situations that would aggravate it, and then D also refers to aggravating. And the caption to the statute says simple and aggravated forms of assaults, batteries, and a fray. I just don't see how you could make an argument that the statute itself doesn't set out separate offenses. I think 1433C2 does not set forth separate offenses, Your Honor, and I believe that's the statute which defines assault upon a female. Actually, that's a subsection of the statute. Yes. It may be a matter of semantics. I don't know. But you seem to be talking about two different things, and that may be the issue, is what do you look at? Do you look at C2, or do you just look at the overall statute? I think in order to find a violation of North Carolina assault on a female, ultimately you're going to have to look at C2. Without a doubt, at some point, yes. And the elements of C2 are indivisible, and therefore North Carolina assault on a female is indivisible. Turning to the government's argument with regards to the pattern jury instructions, we believe that reliance on the North Carolina pattern jury instructions in order to make the North Carolina assault on a female statute divisible is error for multiple reasons. First, it, in essence, violates the directive the Supreme Court set forth in De Camp, and sort of puts the cart before the horse in that under De Camp, if the statute is divisible, you can look to the jury instructions to determine which offense was actually committed. But under the government's approach, we'd be looking at the jury instructions to see if the statute is divisible to see if we can look at the jury instructions. It's circular. It's not what the court in De Camp said that can be done under the divisibility analysis. Also, briefly looking at the Castleman case, would point out to the court that the Supreme Court in Castleman didn't actually perform a divisibility analysis. They simply concluded, because the parties below had not raised the issue, that the statute in question should be considered to be divisible. And once you reach that conclusion, then you can, of course, go to the Shepard-Taylor documents. The government's approach here would sort of invert that and go to the Shepard-Taylor documents first, and that would violate De Camp. I would also argue that the North Carolina pattern jury instructions don't carry the weight that the government wants them to be able to carry. Under the Watson case, which we submitted as supplemental authority, the North Carolina Supreme Court has held the North Carolina pattern jury instructions do not have the force or effect of law. And more importantly, they're not the form, they're not a required form that has to be given to the jury in every case. A trial court trying before a jury North Carolina assault on a female could give the North Carolina pattern jury instructions as set forth by the government. The court can choose to give that form. They can choose to give a modified form. They can choose to give an instruction of their own device. They're not required to follow the pattern jury instructions. And so the pattern jury instructions don't serve to tell this court what the required elements of North Carolina assault on a female are. Assuming that you can go to the pattern jury instructions in the first instance to determine if the North Carolina assault on a female statute is divisible, it doesn't tell you anything if the North Carolina pattern jury instructions aren't the uniform instructions that are required to be given by the court and therefore required to be considered by the jury. Put another way, the North Carolina pattern jury instructions don't tell this court that the jury specifically considered one and only one means of violating North Carolina assault on a female. They don't show the statute is divisible. And finally, Your Honor, we believe that resort to the North Carolina pattern jury instructions is unwarranted when, as here, there's no indication from the statutory language or the state Supreme Court's judicial definition of the statutory elements to suggest that the statute is divisible. It is simply muddying the waters to try and reach for a Shepard-Taylor document or any external document to prove that the statute is divisible when there's no indication from the statutory language or the state Supreme Court's definition to suggest that it is. That's why you have to get back to C2. That's the statute, correct? That's our argument, yes, Your Honor. And doesn't it set forth what seem to be different ways to commit assault on a female, fray, assault in battery, and simple assault? Doesn't it? Well, strictly speaking, C2, the language of C2 does not, Your Honor. It simply says assault. C18, the larger statute, says in the context of assault, battery, or fray. But the statutory language itself doesn't even set forth alternative means. It just says assault. The Supreme Court's, the North Carolina State Supreme Court's decision similarly doesn't set forth the alternative, even set forth the alternative means. In its definition of the elements, it simply says assault. So how should this expanded language inform our decision, then? We should just ignore it? This language about fray and assault in battery and assault, how does that inform our decision? The language of assault, battery, or fray in the larger statute, I don't think has a bearing on the divisibility analysis of assault on a female because I think you do have to then go down to 1433C2. That's what's required for assault on a female, and that's indivisible. Well, what does that language do? It's just totalist superfluous. It's not necessarily superfluous, but it just sort of places it in a context, but isn't a required. But it's in a statutory context of the crime, correct? Yes, Your Honor. So then that's not a separate document. That's something we can look at before we decide whether or not it's divisible or not. Do you agree with that? Yes, Your Honor. All right, when we look at that, why is that not setting forth seemingly different ways of committing the same crime? I think it might set forth alternative means of committing the same crime, Your Honor, but I don't think it sets forth required elements that a jury would have to find for the elements of. So what you're saying is that you could charge assault on a female, that's all, and then at trial you would be free to enter any evidence you would like as to how that was done. That's correct, Your Honor. I believe that in state practice it would be to charge assault on a female, and then at trial the prosecution could present evidence as to the alternative means and that the jury would be free to adopt whichever means they thought was proved by the evidence. And in summary, Your Honor, the statutory language under DeCamp doesn't indicate, I believe, a divisible statute. The state judicial interpretation setting forth the elements of assault on a female doesn't set forth a divisible offense, and the North Carolina pattern jury instructions simply don't carry the weight and authority of law that the government would suppose, and use of them simply isn't warranted unless you can previously show that the statute is divisible. For these reasons, unless there are further questions, we would ask that the court affirm the decision of the district court below dismissing the action. Thank you. Let's hear from the government and reply, please. Your Honors, the government takes the position there are no alternative means in the North Carolina statute. DeCamp made very clear that the distinction to them between elements and means would play out in the Shepard documents. In this case, the North Carolina law, through case development, sets out the different elements of the different types of assault on a female. As I stated in the opening argument, the jury instructions are merely those patterned after the case law. I give them no force of law. It simply is further evidence that North Carolina does, in fact, separate the different types of battery and assault. Is it your argument that this introductory sentence in subsection C that sets out the three different means of assault, that's what would make this later provision on assault on a female divisible? That is it, in part, with the North Carolina case law as have developed it. Again, because there is no definition of assault, assault of battery, or a fray within the statute itself, we have to go to case law in order to define any of those things because the case law establishes that those are, in fact, different crimes. Yes, the statute itself sets out on its face a divisibility. It is a good point to consider, though, if this defendant had been convicted simply of simple assault and the victim had been his wife, we would not be precluded from seeking the same indictment against him as we did in this case. The divisibility is centered on the larger statute, not the specific assault on a female. A simple assault under the North Carolina statute, given the development through case law and as demonstrated through the patterned jury instructions, would be sufficient and have sufficient force, if it were either the attempted battery or the completed battery, to qualify under Castleman as a misdemeanor crime of domestic violence. I think to try to divide the assault on a female is too narrow. Even so, if we go to case law because assault is a common law crime, we can't stop the Herring case, which set out those four elements of assault on a female. Inherent in that definition continues to be a crime, that crime of assault. We must look further to define what an assault is, and the North Carolina law is very clear that that can be any one of three different means. So you're saying that if he was charged with assault on a female, and the statute in question here, if during the trial you couldn't show one of the elements that was missing, for example, if you could show, wait a minute, he's married to her, then you could say, well, we don't need this element now because he's married to her, then he could be guilty of another crime in the same charge? You said if he was married to her, you would need to prove all the other things. Did you say that? No, no, I didn't intend to. No, sir. I was just suggesting that the fact that he's convicted of assault on a female isn't even the necessary predicate North Carolina offense. His conviction under North Carolina law, I was giving a hypothetical, so I'm stepping outside the facts of the case. If his conviction in name had been simply simple assault, it would still be sufficient as long as the victim was his wife. Does that help you in this case? As to where the statute needs to be divisible, I was suggesting that is something that the court can look at, that the assault is divisible under North Carolina law, be it the assault on a female or be it the larger portion of the statute. Let's see if we can agree on this. In terms of the categorical view, what do we look at solely? What language? Let's get that clear. Is the language that just says assault or the language, the sort of the preemptory language that talks about fray, salt and batter, assault? Which one do we look at? Because there's only one that we look at. I believe you take the larger, the main portion of paragraph C and section two as well. I think just like with jury instructions, you have to take it as a whole. We determine whether or not the crime of conviction, that's what we're looking at. The crime is set forth in one place in one language. You're saying we look at the whole jury instructions and everything? No, Your Honor. I thought you were asking me which portion of the North Carolina statute. So both have to go together? C and two, all the language contained in subparagraph C and its subparagraph two. Yes, sir. Thank you. All right, we'll come down and re-counsel and then go into our next case.
judges: William B. Traxler, Jr., Roger L. Gregory, G. Steven Agee